HENRY G. PALMER *vs.* SAMUEL A. MARCH and another.

August 14, 1885.

**Contract—Consideration—Relinquishment of Timber-Culture Claim.**
—Under the act of congress providing for a written relinquishment of his claim by a timber-culture claimant, the holder for whose benefit such relinquishment is made, if seasonably filed, is enabled to enter the same, and secure the benefit thereof for himself, upon complying with the terms of the timber-culture acts. Though not strictly a conveyance or assignment, it is all the transfer which the nature of the case permits, or which would be of any avail to a purchaser. Such relinquishment is the proper subject of contract, and constitutes a valid consideration therefor.

**Same—Construction—Failure to Perform—Damages.**—The defendants, together with other lands which they owned, had possession of a "timber-culture claim" upon government land, which was liable to lapse and become forfeited within a specified time, for want of further improvement and cultivation, and had duly covenanted and agreed with plaintiff "to convey, set over, assign, and deliver" to said plaintiff, free and clear of all liens and incumbrances, such lands, and also "the timber claim," which was particularly referred to and described, and which had been regularly entered and partially improved by one of the defendants. *Held,* that the mere consent by the defendants that the plaintiff might take possession of such "timber claim" was insufficient to constitute a compliance with their contract, but it was their duty to make and deliver the proper relinquishment within the time specified, and that, upon their refusal or neglect so to do within such time, and until after their claim and right thereto lapsed, plaintiff was entitled to recover, as damages, the expenses which he was necessarily put to, growing out of a contest by a subsequent claimant, and a settlement thereof, being less than the value of such timber claim so agreed to be relinquished to plaintiff.

The plaintiff and defendants were jointly interested in certain farming lands and personal property. Differences having arisen between them, they entered into a written agreement for arbitration, under which an award was duly made. This action was brought by plaintiff in the district court for Hennepin county to recover damages for defendants' failure to perform the award. The action was tried before *Lochren,* J., without a jury, and judgment directed and entered for plaintiff, from which defendants appeal.

*Warner, Stevens & Lawrence,* for appellants.

*Boardman & Ferguson,* for respondent.

VANDERBURGH, J. It appears, among other things, from the record of the findings of the trial court, that the plaintiff and the defendants were, for several years prior to January, 1882, jointly interested in the purchase, ownership, and management of certain farming lands in the county of Marshall, in this state, and of certain personal property kept and used thereon in the business of farming, chiefly managed by plaintiff; and that the title to the lands, and certain contracts for lands, were held, for the most part, in the names of the defendants. Included in the joint estate was a certain "tree claim," so called, embracing the quarter-section of land in question, the title to which still remained in the United States, and which the defendant Spaulding had, on the 28th day of May, 1878, duly filed his application to enter, under the acts of congress authorizing such entries. 20 U. S. St. at Large, p. 113. These parties had jointly broken and ploughed thereon 10 acres, and cultivated the same to crop, and planted five acres to trees, prior to the arbitration hereafter mentioned, but did not at any time plant the other five acres, so broken, or any other portion of the land, in timber, seeds, or cuttings, as required by the act of congress referred to. In January, 1882, for the purpose of a settlement of their affairs and a division of their personal and real estate, they mutually entered into a written agreement of arbitration, whereby the defendants, among other things, undertook and covenanted, under their hands and seals, that they would perform the award which should be made, within 15 days after a copy thereof should be served on them. The arbitrators made and published their award, April 17, 1882, and a copy thereof was

served on defendant March, April 20th, and upon Spaulding, April 25th, thereafter.

The "tree claim" above referred to was included in the real estate disposed of by the award, by which the defendants were required immediately "to convey, set over, assign, and deliver to plaintiff" certain personal and real property mentioned, particularly designating, among other parcels, such "tree claim," "free and clear of liens and incumbrances." Soon after the award, the defendants, in conformity therewith, had delivered over to plaintiff all the personal property, and consented that he should take possession of all the real property so awarded to him, without waiting for the preparation and execution of conveyances, assignments or other writings necessary to carry out such award on the part of the defendants, and the plaintiff thereupon did enter and take possession of all such real estate, except the "tree claim." In the mean time plaintiff had bargained the latter to a purchaser who had agreed to pay him the sum of $1,200 therefor, upon plaintiff's procuring and delivering to him a proper "relinquishment" of his claim thereto by the defendant Spaulding. Within the specified 15 days proper conveyances and assignments of the property awarded to plaintiff were duly delivered to him, except that, as the court specially finds, by reason of mistake or oversight, Spaulding had omitted to execute the relinquishment of the "tree claim" in question. Plaintiff thereupon executed to defendants a receipt reciting the proper delivery of such conveyances, "except the relinquishment of 'tree claim' in section 20, which this day said March and Spaulding have executed and delivered to me an agreement to procure and deliver."

By the agreement referred to, the defendants at the same time promised to deliver to the plaintiff, without unnecessary delay, a good and sufficient relinquishment of such "tree claim," to be executed by Spaulding. On the 17th of May, Spaulding, who lived in New York state, executed a relinquishment in due form and forwarded it to March, who lived in Minneapolis, and received it on the 25th of May, and he, as the court finds, thereafter, "not earlier than June 1st, forwarded such relinquishment to an agent in Marshall county, to be delivered to plaintiff." On May 28th Spaulding's claim and interest became forfeited for failure to comply with the terms of the act of

congress, and on May 29th a stranger duly entered his application, and claim to contest the same, and plaintiff was compelled to settle such contest by paying the sum of $412, the amount of his damages claimed and allowed in the trial court, and thereupon was enabled to consummate the sale previously contracted to be made by him.

Upon these facts plaintiff claims that the defendants failed to comply with the terms of the award in respect to the "tree claim," and are therefore liable for the breach of the covenant entered into by them in connection with the arbitration agreement, and that he is entitled to recover, as his damages, the amount he was compelled to pay.

1. The defendants insist that there was no breach of the agreement on their part, because the "tree claim" was not the proper subject of a grant or assignment, and the execution of a relinquishment was not within the terms of the award. By the act of May 14, 1880, (21 U. S. St. at Large, c. 89, p. 140,) "when a timber-culture claimant shall file a written relinquishment of his claim in the local land-office, the land covered by such claim shall be held as open to settlement and entry without further action on the part of the commissioner of the general land-office." It thus appears that a relinquishment prior to the lapse of the claimant's rights would give the holder (as is well understood in practice) the advantage of securing the claim for himself, without a contest, and, by simultaneous entry in his own right, enable him to anticipate other claimants. While not strictly a conveyance or assignment, it was all the transfer, if such it may be called, the nature of the case permitted, or which would be of any avail, and was clearly the disposition intended by the parties in including it in the submission, and by the arbitrators in embracing it in the list of lands directed to be turned over to plaintiff. We have no doubt that persons of ordinary intelligence, familiar with the subject, would so apply the language used by the arbitrators, and the defendants themselves so understood it, for the court finds that the written relinquishment was omitted by mistake when the other conveyances were executed by them on the 6th of May.

2. For the reasons already suggested it is manifest that the consent of defendants to plaintiff's taking immediate possession of the

real estate would be insufficient as a compliance with the award. Nor was it so understood or intended by the parties themselves. It would not enable plaintiff to dispose of the claim, nor give him any substantial advantage over any contestant equally watchful.

3. Nor did the promise or agreement by them made, to supply the omission of such relinquishment from the list of conveyances to plaintiff, without unnecessary delay, or the recital thereof in his receipt to them, merge or supersede the obligation of the original agreement. There was no new contract and no new consideration. It would be still available to him if executed in time to enable him to complete his sale of the claim. Time was not essential, further than that it should be seasonably delivered for such purpose. It was essential that it should be so delivered. No actual damages had yet accrued, but unless the proper writing should be delivered in season they would accrue, and it could not have been contemplated by the parties, or intended by the plaintiff, to waive any substantial rights under the original contract. Undue delay, for whatever cause, would be at defendants' risk; nor was plaintiff obliged to make any demand or give them notice to accelerate performance on their part. Because he did not insist upon a forfeiture it does not follow that he waived a delivery within the period of the life of defendants' claim to the land.

4. It seems to be clear that a seasonable relinquishment by Spaulding would have enabled plaintiff to have realized for the claim the full sum for which he had bargained it. *Prima facie*, in the absence of any other evidence, the value of what plaintiff had contracted for was what he had bargained it away for, and for which it was finally sold by him. Any sum less than this which he was obliged to pay to effect a settlement of the contest which was the result of defendants' default, would be his actual damages, and the same were therefore properly so adjusted by the court.

Order affirmed.